IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL HAUCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 06-135-GPM |
| | ) |
| CONOCOPHILLIPS COMPANY, a corporation, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on the "Motion to Remand, and Award Attorney Fees" brought by Plaintiff Paul Hauck (Doc. 15). For the following reasons, the motion is **GRANTED in part and DENIED in part**. The Court **GRANTS** remand of this case to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction; the Court **DENIES** an award of attorney fees pursuant to 28 U.S.C. § 1447(c).

## INTRODUCTION

Plaintiff brings this action for personal injuries he allegedly suffered while a business invitee at a refinery owned and operated by Defendant ConocoPhillips Company ("ConocoPhillips") in Hartford, Illinois, on December 17, 2003. *See* Complaint ("Compl.") ¶¶ 3-11.[1] Plaintiff alleges that

---

1. Plaintiff's complaint alleges in at least one place that the subject refinery is located in Roxana, Illinois. *See* Compl. ¶ 3. The Court judicially notices that Hartford, Illinois, and Roxana, Illinois, are towns in Madison County, Illinois, that are situated closely adjacent to one another, so that it is possible the refinery is partly located in both towns. *See* FED. R. EVID. 201; *United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999); *United States v. Luck*, 560 F. Supp. 258, 271-72 (N.D. Ga. 1983). The parties seem to be in agreement that the refinery is located in Hartford.

on that date he drove a tanker truck to the refinery to pick up a load of odorized mineral spirits ("OMS"). *See id.* ¶¶ 4-5. While walking on a loading dock at the refinery, Plaintiff slipped and fell, breaking his wrist. *See id.* ¶ 4, ¶ 6, ¶ 7, ¶ 11. Plaintiff alleges that the accident was caused by inadequate lighting on the loading dock, together with a defective fuel-loading system that caused the loading dock to become oily and slippery. *See id.* ¶ 4, ¶ 7, ¶ 10. Plaintiff alleges that at the time of the accident maintenance and safety on the loading dock were the responsibility of Defendant Washington Group International, Inc. ("WGI"), by whom Defendant William Blechinger was employed at the time as safety manager at the refinery. *See id.* ¶¶ 12-17, ¶¶ 18-22.

Plaintiff filed this action originally in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois. Thereafter the action was removed to this Court by Defendant WGI and Defendant Blechinger, with the timely consent of Defendant ConocoPhillips. Defendants WGI and Blechinger contend that the latter has been fraudulently joined to defeat federal diversity jurisdiction because Plaintiff has no possibility of establishing a claim for relief against Blechinger under Illinois law.[2] Plaintiff has moved for remand of this action to state court for lack of subject matter jurisdiction.

---

2. The record shows that, for diversity purposes, Plaintiff is a citizen of Illinois, while Defendant ConocoPhillips is a citizen of Delaware and Texas, Defendant WGI is a citizen of Ohio and Idaho, and Defendant William Blechinger is a citizen of Illinois. The Court notes that the parties do not dispute that an amount in excess of $75,000, exclusive of interest and costs, is in controversy. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). *See also Andrews v. E.I. Du Pont De Nemours & Co.*, No. 04-2882, 2006 WL 1191518, at *3 (7th Cir. May 5, 2006) (the amount in controversy in a truck driver's action against a shipper for negligently loading a truck, allegedly resulting in an accident, was at least $75,000, as required for the exercise of diversity jurisdiction, where the truck driver's complaint sought damages "in excess of $50,000," the driver alleged "severe and permanent" injuries resulting from the accident, discussion with the driver's counsel led the shipper to believe that the driver's medical and rehabilitation expenses alone would exceed $75,000, and the driver did not challenge the shipper's estimate of his potential damage).

## DISCUSSION

### A.   Legal Standard

Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1441. *See also Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir. 2004); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000). The party seeking removal has the burden of establishing federal jurisdiction. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Id*. Put another way, there is a strong presumption in favor of remand. *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976).

In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999). A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). A defendant seeking removal based on alleged fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).

### B.   Plaintiff's Motion for Remand

#### 1.   Possibility of Establishing a Claim for Relief under Illinois Law

WGI's asserted grounds for fraudulent joinder in this case are premised on the familiar rule

of agency law that an agent's breach of a duty to his or her principal, that is, a nonfeasance, is not ipso facto a breach of a duty to third persons, that is, a misfeasance, unless the agent owes a duty to an injured third person. In *Adkins v. Chicago, Rock Island & Pacific Railroad Co.*, 274 N.E.2d 507 (Ill. App. Ct. 1971), the court set out the traditional rule as follows: "The agent is . . . personally liable to third persons for his own misfeasances and positive wrongs. But he is not, in general . . . , liable to third persons for his own nonfeasances or omissions of duty, in the course of his employment. His liability, in these latter cases, is solely to his principal." *Id*. at 512. WGI argues that, because the conduct by William Blechinger complained of in this case comprises only a breach of Blechinger's duty to WGI, his principal, Blechinger has been fraudulently joined to defeat diversity. The Court disagrees.

The controlling principle of law in this instance is that "[a] person is not absolved of personal liability to a third person on account of his negligence or other wrongful act merely because at the time he was acting as an employee within the scope of his employment." 17 Illinois Law and Practice *Employment* § 256 (collecting cases). *See also Joseph J. Legat Architects, P.C. v. U.S. Development Corp.*, 625 F. Supp. 293, 300 (N.D. Ill. 1985) (applying Illinois law). Further, the negligence of an employee in the scope and course of employment is imputed to his or her employer. *See Ferrari v. Brannock*, 270 N.E.2d 281, 285 (Ill. App. Ct. 1971) ("The negligence of the servant is imputable to the master where it was committed within the scope of the employment contract."); *Watson v. Taylor*, 256 N.E.2d 474, 474 (Ill. App. Ct. 1970) ("As a general rule an injured party must seek his redress from the person who caused the injury. A recognized exception to the general rule is applicable where the person causing the injury is an agent or servant in which event his misconduct may be imputed to the principal or master."). In this instance, the clear import of the

allegations of Plaintiff's complaint is that Blechinger, as safety manager at the refinery where Plaintiff was injured, was negligent in discharging his duties, with the proximate result that Plaintiff was injured.

The Court's conclusion that Blechinger can be liable to Plaintiff is bolstered by Restatement (Second) of Agency § 352 (1958), which has been adopted in Illinois, *see Cahill v. Eastern Benefit Sys., Inc.*, 603 N.E.2d 788, 793 (Ill. App. Ct. 1992); *People v. Community Hosp. of Evanston*, 545 N.E.2d 226, 234 (Ill. App. Ct. 1989); *Bescor, Inc. v. Chicago Title & Trust Co.*, 446 N.E.2d 1209, 1212-13 (Ill. App. Ct. 1983), and which is cited approvingly in WGI's brief in opposition to Plaintiff's motion for remand. Section 352 of the Restatement says, "An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things." Restatement (Second) of Agency § 352. Importantly, the commentary to section 352 explains, "[I]f the principal who is under a duty to keep property in repair . . . entrusts the repair to an agent and the agent fails to make the repairs, as a result of which a third person is harmed by the defective condition, the agent should be subject to liability to the third person[.]" *Id*. reporter's notes.

The commentary to section 352 of the Restatement instructs that "if the agent promises or knowingly causes a third person to believe, that he will perform his duty to the principal and thereafter fails to perform, he should be liable under the circumstances just stated." Restatement (Second) of Agency § 352 reporter's notes. Significantly, "[t]his promise need not be express but can be inferred in many situations, as where the agent has continuously performed duties, knowing that other persons are relying upon his continued performance." *Id*. The commentary goes on to

say that "the agent may be liable to third persons even though the principal is not liable to them and even though there has been no reliance by the third person upon the performance by the agent." *Id*. The commentary offers a useful illustration:

> The defendant, a railroad servant, agrees to guard a railroad crossing to prevent harm to pedestrians. By undertaking this he creates a danger to pedestrians if he does not do what he promised his principal to do. If the railroad is under a duty to guard the crossing, it is clear that the only faulty person in the undertaking is the crossing tender and that the railroad is liable in such a case because of the crossing tender's default. To make the railroad responsible without making the crossing tender liable would seem obviously unjust . . . . But even if the railroad is under no duty to guard the crossing, the crossing tender should be responsible to the injured traveler for failure to perform his duty, since but for his assumption of a duty and his subsequent failure, it may be rationally assumed that a more faithful employee would have prevented the harm to the plaintiff.

*Id*. *See also* Restatement (Second) of Agency § 354 cmt. a, illus. 1. In sum, "where physical harm to the person or tangible things of another is caused[,] . . . the agent may become personally responsible for his failures in performing his undertaking to the principal." Restatement (Second) of Agency § 352 reporter's notes.[3]

---

3. It should be noted that, under the Restatement, "an agent is not liable to a third person for undertaking and later failing to perform a duty to the principal to pay money or otherwise deal with the purely economic interests of such person, in the absence of a promise made for his benefit," Restatement (Second) of Agency § 352 reporter's notes, a rule with which Illinois law is in accord. *See Cahill*, 603 N.E.2d at 793 (quoting Restatement (Second) of Agency § 352) ("An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed."); *Community Hosp. of Evanston*, 545 N.E.2d at 233-34 (a hospital director failed to state a claim against a bank for implied indemnification for breach of fiduciary duty based upon the law of agency in connection with a suit by the Illinois Attorney General against the director and the bank for alleged mishandling and dissipation of a restricted endowment fund donated to the hospital where the bank's role under an advisory agreement between the bank and the hospital was to act as an agent of the hospital, and there was nothing in the agreement to show that the bank's duty was also to protect individual members of the board of directors from personal liability for malfeasance); *Bescor, Inc.*, 446 N.E.2d at 1212-13 (a pleading in an action by a subcontractor against a construction loan escrowee, alleging that the escrowee had failed to exercise the highest degree of care in accordance with authority extended by a project owner, with the result that a disbursement was made to one not authorized to receive it,

In this instance, Plaintiff alleges that WGI entrusted responsibility for safety at the ConocoPhillips refinery in Hartford, Illinois, to William Blechinger. Plaintiff's allegations support an inference that third persons, like Plaintiff, would rely on Blechinger to perform his duty. Plaintiff alleges further that Blechinger failed to perform his duty, proximately resulting in injury to Plaintiff. These allegations are adequate to assert a claim for relief against Blechinger under Illinois law, thus defeating WGI's contention that Blechinger has been fraudulently joined. *See Riddle v. Merck & Co.*, Civil No. 06-172-GPM, 2006 WL 1064070, at *2 (S.D. Ill. Apr. 21, 2006); *Rabe v. Merck & Co.*, No. Civ. 05-363-GPM, Civ. 05-378-GPM, 2005 WL 2094741, at *2 (S.D. Ill. Aug. 25, 2005). *See also Katonah v. USAir, Inc.*, 876 F. Supp. 984, 987 (N.D. Ill. 1995) (to withstand a claim of fraudulent joinder, "Plaintiffs need only plead a cause of action which might survive a motion to dismiss in the state court."). *Cf. Benincasa v. Flight Sys. Auto. Group, L.L.C.*, 242 F. Supp. 2d 529, 535 (N.D. Ohio 2002) ("Under the doctrine of fraudulent joinder, the inquiry is whether there is at least a colorable claim against the non-diverse parties in state court.").

The Court agrees with WGI that, in all likelihood, Plaintiff's allegations against Blechinger could be pleaded with greater specificity. However, it is the burden of a defendant claiming fraudulent joinder to prove it by "put[ting] forward evidence that would negate a possibility of liability on the part of" a non-diverse defendant, not by "simply pointing to the plaintiff's lack of evidence" to show federal jurisdiction, *Travis v. Irby*, 326 F.3d 644, 650-51 (5th Cir. 2003), and this affirmative proof of fraudulent joinder must be clear and convincing. *See Voors v. National Women's Health Org., Inc.*, 611 F. Supp. 203, 208 (N.D. Ind. 1985). *See also Grassi v. Ciba-Geigy,*

---

failed to state a cause of action in negligence, in that it did not allege facts establishing a duty owing from the escrowee to the subcontractor, as apart from a duty owing from the escrowee to the owner). Of course the injuries at issue in this case are not purely economic.

*Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990); *Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1274 (M.D. Ala. 2001); *Willis v. Life Ins. Co. of Ga.*, No. Civ.A. 400CV323PB, 2001 WL 34403088, at *4 (N.D. Miss. May 31, 2001). A defendant's stringent burden of proof in establishing a claim of fraudulent joinder is not met merely by pointing to supposed defects in a plaintiff's pleading. *See Duffin v. Honeywell Int'l, Inc.*, 312 F. Supp. 2d 869, 871 (N.D. Miss. 2004) (a removing defendant cannot allege vague and inconclusive pleadings as a basis for finding that plaintiffs have no claim against non-diverse defendants); *Rosamond v. Garlock Sealing Techs., Inc.*, No. 3:03CV235, 2004 WL 943924, at *2 (N.D. Miss. Apr. 5, 2004) (the fact that a plaintiff's complaint makes "vague and conclusory allegations" does not mean defendants have demonstrated fraudulent joinder). "The burden of establishing fraudulent joinder is a heavy one, resting with the out-of-state defendant seeking to remove the cause to federal court." *County of Cook v. Mellon Stuart Co.*, 812 F. Supp. 793, 796 (N.D. Ill. 1992) (citing *Poulos*, 959 F.2d at 73). The Court does not shift the burden of proof on a claim of fraudulent joinder to plaintiffs.

      **2.**    **Piercing the Pleadings**

"In evaluating a claim of fraudulent joinder a court may in some circumstances 'pierce the pleadings.'" *Rutherford v. Merck & Co.*, Civil. No. 06-159-GPM, 2006 WL 1064071, at *4 (S.D. Ill. Apr. 21, 2006) (quoting *CC Indus., Inc. v. ING/ReliaStar Life Ins. Co.*, No. 03 C 2075, 2003 WL 21360905, at *3 (N.D. Ill. June 11, 2003)). *See also Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) ("[F]raudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony."). "[T]his . . . is a strictly circumscribed inquiry limited to uncontroverted summary evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be

liable to a plaintiff under applicable state law." *Rutherford*, 2006 WL 1064071, at *4.[4]

WGI urges the Court to pierce the pleadings in evaluating its claim of fraudulent joinder, pointing to various items of summary judgment-type evidence in the record, including an affidavit by William Blechinger which states, in pertinent part,

> On or about December 17, 2003, Washington Group International, Inc. was not performing work at the OMS loading facility in Hartford, Illinois.
>
> * * * *
>
> On or about December 17, 2003, I was not present at the OMS loading facility in Hartford, Illinois referred to in plaintiff's complaint.
>
> * * * *
>
> In December of 2003 my normal work hours were from 7:30 a.m. until 3:30 p.m. and I would not have been present at the scene of plaintiff's alleged accident.

Doc. 10, Ex. 1. Also before the Court is an accident report apparently prepared by ConocoPhillips

---

4. Importantly, a removing defendant's submission of summary evidence in support of a claim of fraudulent joinder does not impose on a plaintiff a burden to submit summary evidence of his or her own to disprove fraudulent joinder. *See Phillips Petroleum Co. v. AIG Tech. Servs., Inc.*, 99 F. Supp. 2d 787, 791 (S.D. Tex. 2000) (although plaintiffs, on a motion to remand, could have submitted affidavits and deposition transcripts in order to rebut a removing defendant's allegation of fraudulent joinder, the plaintiffs were not required to do so and could rely on allegations verified by their attorney); *Rogers v. Modern Woodmen of Am.*, No. CIV.A.1:97CV10-D-D, 1997 WL 206757, at *2 (N.D. Miss. Apr. 10, 1997) ("While not required to do so, plaintiffs may submit affidavits and deposition transcripts to supplement the factual allegations in their complaint."). Although a court may utilize a "summary judgment-like procedure for disposing of fraudulent joinder claims," *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990), this procedure is not to be confused with summary judgment. A party asserting federal jurisdiction bears the burden of proving that a case is properly in federal court and may not "be relieved of his burden by any formal procedure," *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936), just as a federal court in resolving a claim of fraudulent joinder is required to construe both the facts and the law in the light most favorable to the plaintiff. *See Rutherford*, 2006 WL 1064071, at *4 (quoting *Valentine v. Ford Motor Co.*, No. 2:03-CV-090-JDT-WGH, 2003 WL 23220758, at *4 (S.D. Ind. Nov. 21, 2003)) (explaining that "[t]he test for fraudulent joinder . . . is a less searching test than the test under Rule 12(b)(6) . . . of the Federal Rules of Civil Procedure[.]").

which shows that on December 17, 2003, Plaintiff was injured at approximately 5:30 a.m., outside Blechinger's regular hours of work. *See id*., Ex. 3. Finally, WGI points to an affidavit by James Brummett, a safety manager for the company, who attests:

> The OMS loading facility referred to in plaintiff's Complaint is not owned, operated or maintained by Washington Group International, Inc. and was not owned, operated or maintained by Washington Group International, Inc. in December of 2003 at the time of plaintiff's alleged accident.
>
> \* \* \* \*
>
> Washington Group International, Inc. performs construction maintenance under contract with ConocoPhillips, Inc. At or near the time of plaintiff's alleged accident, Washington Group International, Inc. was engaged in performing turnaround work at the Hartford distilling unit and coker facility inside the plant proper and was not working at or near the OMS loading facility referred to in plaintiff's Complaint.

*Id*., Ex. 2.

The fact that Blechinger likely was not on the premises of the refinery when Plaintiff was injured does not seem to the Court to be dispositive of whether Plaintiff could establish a claim for relief against the diversity-defeating Defendant in state court. Plaintiff has alleged that his fall was caused by "a defective scully system, leaking fueling arm, defective access box, broken scully light, by-passed scully light, inadequate lighting, improperly hung loading arm, defective gasket on fueling arm, and hole in the scully bucket and other defects in the fueling hose and nozzle which [led] to the . . . oily and slippery area on the OMS loading dock." Compl. ¶ 4. These defective conditions of the premises are extensive and serious and obviously did not arise overnight. In other words, if true, Plaintiff's allegations suggest conditions that had been in place a sufficiently long time before Plaintiff's injury occurred so that a reasonable safety manager could have or should have known about them. *See Kocot v. Alliance Mach. Co.*, 651 F. Supp. 226, 227 (S.D. Ill. 1986) (in evaluating a claim of fraudulent joinder, a court must construe all of a plaintiff's factual allegations in the light

most favorable to the plaintiff).  *See also Augustine v. Target Corp.*, 259 F. Supp. 2d 919, 922 (E.D. Mo. 2003) (a plaintiff in a slip-and-fall case suing a non-resident store sufficiently alleged a resident store manager's personal negligence under Missouri law; the plaintiff alleged that the manager was responsible for maintaining the store's parking lot, that he knew or should have known of a dangerous sewer grate where the plaintiff's injury occurred, and that he had negligently failed to repair it or warn customers of the danger).

As to whether WGI was or was not performing work at the OMS loading facility when Plaintiff was injured, as William Blechinger has attested WGI was not, or whether at that time the facility was or was not owned, operated, or maintained by WGI, as James Brummett has attested it was not, this clearly is not a matter the Court can decide on a claim of fraudulent joinder to defeat diversity jurisdiction.  The Court cannot resolve the liability of WGI, a diverse Defendant, in addressing whether Blechinger, a non-diverse Defendant, has been fraudulently joined.  The Court, relying upon binding precedent of the Supreme Court of the United States, has held that a claim of fraudulent joinder that "indicate[s] that the plaintiff's case [is] ill-founded as to all the defendants" is one which "manifestly [goes] to the merits of the action as an entirety, and not to the joinder" and is "not such as to require the state court to surrender its jurisdiction." *Simmons v. Norfolk S. Ry. Co.*, 324 F. Supp. 2d 914, 917 (S.D. Ill. 2004) (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 153-54 (1914)).[5]  *See also Rutherford*, 2006 WL 1064071, at *6 ("[T]he Court expresses considerable skepticism about whether the learned intermediary doctrine is a proper basis for a claim

---

5.  Until 1948 defendants effected removal by petitioning the state court in which an action was pending for leave to remove the action to federal court. *See generally* 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice & Procedure Deskbook* § 42 (2002).  This is why in *Cockrell* the Supreme Court spoke of the state court refusing to "surrender" its jurisdiction.

of fraudulent joinder . . . , given that the defense implicates issues about foreseeability and causation germane to the liability of both [the removing defendant] and the diversity-defeating defendants.").

For the Court to hold that Blechinger cannot be liable to Plaintiff because WGI was not in fact performing work at the OMS loading facility in Hartford, Illinois, at the time Plaintiff was injured would of course establish the law of the case as to WGI's liability, requiring the Court to enter judgment for WGI at a later stage in these proceedings. *See Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (explaining that "law of the case . . . as applied to the effect of previous orders on the later action of the court rendering them in the same case . . . expresses the practice of courts generally to refuse to reopen what has been decided[.]"); *Moore v. Anderson*, 222 F.3d 280, 284 (7th Cir. 2000) ("Under the law of the case doctrine, . . . when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."). *See also Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (explaining that, when a finding of fraudulent joinder will have law-of-the-case effect as to the liability of diverse defendants, the "jurisdictional" issue is in fact an attack on the merits of a plaintiff's claim that must be resolved in state court). Perhaps more to the point, were the Court at a later stage in this case to hold that WGI in fact owned, operated, or maintained the facility where Plaintiff was injured, this in turn would require the Court to revisit a ruling that Blechinger was fraudulently joined because of WGI's lack of control over the facility. *See McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 335-37 (5th Cir. 2004) (in a case arising from a car-train collision, reversing a finding of fraudulent joinder as to the non-diverse train crew on the grounds that the crew had not been negligent where the trial court later denied summary judgment as to the negligence of the railroad, the liability of which

depended of course upon that of the crew).

WGI and ConocoPhillips, relying upon *Boone v. Citigroup, Inc.*, 416 F.3d 382 (5th Cir. 2005), and *Rainwater v. Lamar Life Insurance Co.*, 391 F.3d 636 (5th Cir. 2004), insist that the Court is free to resolve the liability of WGI in deciding whether Blechinger is fraudulently joined. They argue that a district court can make rulings dispositive as to the liability of diverse defendants in resolving a claim of fraudulent joinder provided the court leaves standing at least one claim for relief asserted solely against a diverse defendant. *See Boone*, 416 F.3d at 390-91; *Rainwater*, 391 F.3d at 638. It is true that under Supreme Court precedent a claim of fraudulent joinder is improper if "it indicate[s] that the plaintiff's case [is] ill founded as to *all* the defendants." *Cockrell*, 232 U.S. at 153 (emphasis added). However, the Court does not believe that the correct interpretation of this language from *Cockrell* is that the Court is at liberty to make rulings dispositive of the liability of both WGI and Blechinger in deciding whether Blechinger has been fraudulently joined merely because, having done so, Plaintiff's claim against ConocoPhillips will remain unscathed. Therefore, the Court respectfully declines to follow *Boone* and *Rainwater*. *See Bavone v. Eli Lilly & Co.*, Civil No. 06-153-GPM, 2006 WL 1096280, at *3 (S.D. Ill. Apr. 25, 2006).

Under the reasoning of *Boone* and *Rainwater*, the Court is free to adjudicate the merits of Plaintiff's "case" against both WGI and Blechinger in ruling on fraudulent joinder, so long as the Court does not decide the liability of "all" Defendants in this action. This position fundamentally misapprehends what is meant by a "case." A plaintiff's "case" is not all of the claims for relief asserted in a complaint. Instead, a "case" is *any* claim for relief asserted in a complaint, although modern rules of civil procedure permit a plaintiff to join freely in a single complaint numerous claims for relief that arise from a common nexus of operative fact. *See United Mine Workers of*

*Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (construing FED. R. CIV. P. 20). Thus, a claim of fraudulent joinder that challenges the merits of even one of a plaintiff's claims for relief asserted in a single complaint is improper. "In no case can the right of removal be established by a petition to remove which amounts simply to a traverse of the facts alleged in plaintiff's petition, and in that way undertaking to try the merits of a cause of action, good upon its face." *Simmons*, 324 F. Supp. 2d at 916 (quoting *Southern Ry. Co. v. Lloyd*, 239 U.S. 496, 500 (1916)).[6] A "cause of action" is of course the "group of operative facts giving rise to one or more bases for suing" or, differently put, "a factual situation that entitles one person to obtain a remedy in court from another person." Black's Law Dictionary (8th ed. 2004). It is the common-law ancestor of the modern "claim for relief." FED. R. CIV. P. 8(a). *See also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1216 (3d ed. 1998 & Supp. 2005). In other words, allegations of fraudulent joinder are improper if they attack the merits of any of a plaintiff's claims for relief.

Moreover, the argument that a claim of fraudulent joinder that resolves the merits of fewer than all of the claims of relief asserted in a complaint is not supported by Supreme Court precedent. In *Illinois Central Railroad Co. v. Sheegog*, 215 U.S. 308 (1909), the Court addressed a claim of fraudulent joinder in a wrongful death suit. In *Sheegog* the estate of a railroad engineer killed in a train derailment accident brought suit for negligence in state court against the Illinois Central Railroad Company ("Illinois Central"), the engineer's employer. *See id.* at 315. Also named as defendants were the Chicago, St. Louis, and New Orleans Railroad Company, from which Illinois Central leased the track where the derailment occurred, and the conductor of the train on which the

---

6. *Lloyd* antedates of course the adoption of the Federal Rules of Civil Procedure. In common-law pleading when a defendant denied a plaintiff's allegations this was termed a "traverse" of those allegations. *See McGann v. Kelly*, 891 F. Supp. 128, 131 n.1 (S.D.N.Y. 1995).

engineer was working when he was killed. *See id*. The Court detailed the plaintiff's allegations as follows:

> It was alleged that through the negligence of [the defendant railroad companies] the roadbed, track, etc., were in an improper condition; that through the negligence of the Illinois Central the engine and cars were in an improper condition; and that the death was due to these causes acting jointly, the negligence of the Illinois Central in permitting its engine, cars, and road to be operated while in such condition, and the negligence of the conductor in ordering and directing the management of the train.

*Id*. Illinois Central sought to remove the case to federal court in diversity jurisdiction, contending that the lessor railroad and the conductor, both of whom defeated diversity, had been fraudulently joined. According to the Court, "the petition [for removal] alleged that the plaintiff had joined [the lessor railroad and the conductor] as defendants solely for the purpose of preventing the removal." *Id*. The petition for removal "admitted the lease [between Illinois Central and the lessor railroad], and averred that [Illinois Central] operated the road exclusively, and alone employed the deceased. It went on to allege that the charge of joint negligence against the lessor and lessee in causing the wreck, as stated, was made only for the above purpose, and was fraudulent and knowingly false." *Id*.

The Court concluded that, because the applicable substantive law in the case held a lessor to be jointly liable for injury caused by a lessee, Illinois Central had failed to show fraudulent joinder. "If the legal effect of the declaration in this case is that [Illinois Central] was guilty of certain acts and omissions by reason of which a joint liability was imposed upon it and its lessor, the joinder could not be fraudulent in a legal sense on any ground except that the charge against the alleged immediate wrongdoer, [Illinois Central], was fraudulent and false." *Sheegog*, 215 U.S.

at 316.[7] Importantly, the Court noted that the plaintiff's claim against the conductor likely was barred by the "fellow-servant" rule, the common-law doctrine that an employer is not liable for an employee's injuries caused by a negligent co-worker, although the Court did not decide the issue because, having concluded the plaintiff had not fraudulently joined the lessor railroad, there was no need to do so. *See id*. at 317. *See also* 30 C.J.S. *Employers' Liability* § 167 (1955 & Supp. 2005) (discussing the fellow-servant rule). The point is significant because it shows that the Court's decision in *Sheegog* did not turn on whether the removing defendant's allegations of fraudulent joinder would have resolved the plaintiff's claims against all or fewer than all of the defendants in the case; the plaintiff likely had no claim, under the fellow-servant rule, against the diversity-defeating co-employee.

This Court's conclusion that the claim of fraudulent joinder in this case is improper is supported also by *In re New England Mutual Life Insurance Co. Sales Practices Litigation*, 324 F. Supp. 2d 288 (D. Mass. 2004). In *New England Mutual* a removing defendant argued that alleging fraudulent joinder on grounds dispositive of the liability of both diverse and non-diverse defendants did not violate the strictures on fraudulent joinder set out by the Supreme Court in *Cockrell*, provided resolution of the allegations of fraudulent joinder left untouched certain claims asserted only against the removing defendant. *See* 324 F. Supp. 2d at 305-06. The *New England Mutual* court disagreed. The court observed that "these circumstances are similar to, but not exactly the same as, the circumstances under which *Cockrell* precludes a finding of fraudulent joinder. The

---

7. In common-law pleading, a declaration was "[t]he plaintiff's first pleading in a civil action . . . . Today . . . in most American jurisdictions, it is called a petition or complaint." Black's Law Dictionary. *See also* Jonathan M. Gutoff, *Original Understandings and the Private Law Origins of the Federal Admiralty Jurisdiction: A Reply to Professor Casto*, 30 J. Mar. L. & Com. 361, 389 n.120 (1999).

arguments offered to prove fraudulent joinder do not show that *no case* can be made against the diverse defendant." *Id*. (emphasis in original). However, the court concluded, "the difference is irrelevant":

> The Court in *Cockrell* concluded that fraudulent joinder does not exist when an argument offered to prove fraudulent joinder of non-diverse defendants simultaneously shows that no case can be made against the diverse defendants. The explanation for this conclusion was that such an argument "does not engender or compel the conclusion that the [non-diverse defendants] were wrongfully brought into a controversy which did not concern them." Stated differently, if an argument offered to prove fraudulent joinder of non-diverse defendants also shows that no case exists against the diverse defendants, no legitimate reasons exist to set apart the non-diverse defendants as fraudulently joined.

*Id*. at 306 (quoting *Cockrell*, 232 U.S. at 153). The *New England Mutual* court said, "The concerns that underlie *Cockrell* also apply to arguments offered to prove fraudulent joinder that simultaneously show that *some claims* against the diverse defendant or defendants must fail." *Id*. (emphasis in original). "Such arguments do not engender or compel the conclusion that the non-diverse defendants were wrongfully brought into a controversy that did not concern them. They do not offer a legitimate reason to set apart the non-diverse defendants as fraudulently joined." *Id*.

It is this Court's view that, in every case in which a federal court is asked to find fraudulent joinder on grounds dispositive of the liability of diverse and non-diverse defendants alike, the court is being asked to exercise jurisdiction it does not possess. Where "[t]here is nothing more than a traverse of the cause of action . . . . the plaintiff has a right of action under the law of the state and to insist upon [a non-diverse defendant's] presence as a real defendant." *Simmons*, 324 F. Supp. 2d at 916 (quoting *Chicago, Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915)). To find that William Blechinger cannot be liable to Plaintiff because WGI was not in control of the

loading dock where Plaintiff was injured at the time of the accident giving rise to this case is simply a traverse of Plaintiff's claims against both WGI and Blechinger, not an inquiry into subject matter jurisdiction. Moreover, the Court notes that any resolution of Blechinger's liability necessarily operates to discharge the liability of WGI as well because, as has been discussed, the liability of WGI in this case is, at least in part, derivative of that of its agent. *See Jenkins v. Union Nat'l Life Ins. Co.*, No. Civ.A. 4:03CV0034-P-B, 2004 WL 555250, at *2 (N.D. Miss. Mar. 15, 2004) (refusing to find fraudulent joinder as to agents of the removing defendants based on a defense of the statute of limitations common to both the agents and the diverse defendants: "[I]f the Court deems that the statute of limitations has run against the resident defendants, then the statute of limitations has also run against the non-resident defendants given that the claims against the latter are tied to those of the former."); *Polk v. Lifescan, Inc.*, No. Civ.A. 4:03CV020-P-B, 2003 WL 22938056, at *3 (N.D. Miss. Sept. 22, 2003) (noting that in cases removed on the basis of alleged fraudulent joinder in which the liability of the removing defendant is derivative of the liability of a non-diverse defendant, "a ruling on the claims against the local-agent defendant necessarily involves a decision on the merits of the claims against the diverse principal defendant given *respondeat superior* doctrine."). The Court concludes that this case is due to be remanded to state court.

      C.      **Costs and Expenses under 28 U.S.C. § 1447(c)**

Plaintiff requests an award of costs and expenses pursuant to 28 U.S.C. § 1447, which provides, in pertinent part, "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704 (2005), the Court held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party

lacked an objectively reasonable basis for seeking removal." *Id*. at 711. The Court concludes in its discretion that an award pursuant to section 1447(c) is not appropriate in this case. There is no evidence here that this case was removed for the purpose of prolonging litigation or increasing Plaintiff's costs in prosecuting the case. Although the Court ultimately found unpersuasive the arguments and evidence offered in support of removal, the removal was not objectively unreasonable. *See Orbitz, LLC v. Worldspan, L.P.*, No. 05 C 5972, 2006 WL 903251, at *3 (N.D. Ill. Apr. 3, 2006); *Impact Gel Corp. v. Rodeen*, No. 05-C-223-C, 2005 WL 3555422, at *2 (W.D. Wis. Dec. 27, 2005). Therefore, an award of costs and expenses, including attorney fees, will be denied.

### CONCLUSION

For the foregoing reasons, Plaintiff's "Motion to Remand, and Award Attorney Fees" (Doc. 15) is **GRANTED in part and DENIED in part**. The Court **GRANTS** remand of this case to state court for lack of federal subject matter jurisdiction; the Court **DENIES** an award of attorney fees pursuant to 28 U.S.C. § 1447(c). Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: 6/6/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge